IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

COLONY BANK,                          *

        Plaintiff,                    *

vs.                                   *
                                          CASE NO. 4:10-CV-131 (CDL)
HANOVER INSURANCE COMPANY,            *

        Defendant.                    *

_____

O R D E R

A fire caused substantial damage to an historic textile mill that had been converted into rental and special event space near the banks of the Chattahoochee River. Plaintiff Colony Bank ("Colony") holds a mortgage on the property and seeks to recover insurance proceeds from Defendant Hanover Insurance Company ("Hanover"), which insured the property shortly before the fire, listed Colony as a loss payee in its commercial insurance policy, and failed to notify Colony when the insurance coverage was not renewed by the owner of the property. Plaintiff contends that Hanover's failure to notify it of the nonrenewal of the policy caused the policy to renew automatically for an additional policy term, which would include the date of the fire. Hanover responds that under the Georgia statute, which it argues applies here, the only consequence of Hanover's failure to notify Colony of the named insured's

nonrenewal of the policy was that Colony had the option of extending coverage for an additional thirty days immediately following the policy's termination date, and since the fire occurred beyond that thirty day period, no coverage exists.

Presently pending before the Court are the parties' cross motions for summary judgment. For the reasons set forth below, the Court grants in part and denies in part Hanover's summary judgment motion (ECF No. 22) and denies Colony's summary judgment motion (ECF No. 9). The Court concludes that a genuine fact dispute exists on Colony's breach of contract claim based on Hanover's failure to notify Colony that it had not renewed the policy. Accordingly, the parties are not entitled to summary judgment on that claim. To the extent that Colony claims that Hanover breached the contract by failing to pay the claim when Colony made the demand, the Court finds that such a claim fails. The Court also finds that no genuine fact dispute exists on Colony's bad faith claim and that Hanover is entitled to judgment as a matter of law on it, so Hanover's motion for summary judgment as to the bad faith claim is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of

*material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.   *Id.* at 248.   A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.   *Id.*

FACTUAL BACKGROUND

The following facts are undisputed for purposes of summary judgment unless otherwise noted.   Hanover issued insurance policy number FHA 0012156 ("Policy") to River Mill, LLC ("River Mill").   The Policy covered eight buildings owned by River Mill that are located at 3715 First Avenue in Columbus, Georgia ("Property").   The Policy lists Colony as a mortgage holder on the Property and as a loss payee.   The original policy period for the Policy was May 10, 2007 to May 10, 2008.

River Mill purchased the Policy through insurance brokerage firm J. Smith Lanier ("JSL").   JSL employee Robert Culpepper handled the placement of coverage for River Mill.   Tom Schoen, a commercial lines underwriting manager at Hanover, worked with JSL on the issuance of the Policy.

In July of 2007, Hanover conducted a Loss Control Survey at the Property and determined that the Property was underinsured

and that there was a vacancy at the Property because River Mill's largest tenant had terminated its lease.   Schoen called Culpepper on the telephone and told him that "something would have to change" regarding the Policy due to these issues. Schoen Dep. 96:19-23, ECF No. 12.   According to Culpepper, Schoen said that Hanover would have to cancel the Policy. Culpepper Dep. 15:1-16, ECF No. 13.   Culpepper asked Schoen not to cancel the Policy and told Schoen that he would replace the coverage.   Culpepper asked Schoen not to send notice of cancellation to River Mill.

Sometime prior to August 24, 2007, Schoen emailed Culpepper and stated:

> Robert, I really need to move forward with this.  I am going to set this up for a midterm cancellation and I am going to use a[] 9/1 date.  I haven't heard what the plan for the occupied section is so I will include that piece as well.  Tom.

Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. [hereinafter Def.'s SMF] Ex. 1, Schoen Dep. Ex. 2, Email chain between T. Schoen & R. Culpepper, Aug. 24, 2007, ECF No. 24-9 at 15.   On August 24, 2007, Schoen re-sent the email, Schoen Dep. 47:11-23, and prefaced it with the following message:

> I am sorry I never heard back from you on this.   I would have liked to know that you had this taken care of before I non renewed.  But at this point, I have to assume you are placing it elsewhere.  Tom.

Def.'s SMF Ex. 1, Schoen Dep. Ex. 2, Email chain between T. Schoen & R. Culpepper, Aug. 24, 2007, ECF No. 24-9 at 15. Culpepper responded: "Tom...We are placing cover with the expiring carrier.  We will have this done by 08-31-07.  Thanks, Robert."  *Id.*  Later that day, Schoen entered an order into Hanover's computer system instructing that the Policy be canceled effective September 1, 2007 without notice.

The Policy stated that if Hanover decided to "cancel or nonrenew" the Policy, Hanover would "mail or deliver notice of [its action] . . . to the first Named Insured and lienholder, if any, at the last mailing address known to [Hanover]."  Def.'s SMF Ex. 1, Schoen Dep. Ex. 1, Policy, Georgia Cancellation and Nonrenewal Endorsement at 2, ECF No. 24-4 at 4.  The Policy is silent on the consequences of a failure to send a cancellation or nonrenewal notice.

On August 30, 2007, Hanover sent a "Cancellation Memorandum" to JSL, which stated that the cancellation was effective September 1, 2007 and that the Policy was "cancelled at company request."  Pl.'s Statement of Material Facts to Which There is No Genuine Issue to be Tried [hereinafter Pl.'s SMF] Ex. F, Cancellation Memo., ECF No. 10-5.  Hanover refunded $26,968.00 to River Mill as a pro-rata reimbursement of the premium paid for the Policy.  *Id.*  Hanover did not provide a notice of cancellation or a notice of nonrenewal to Colony.

It is undisputed that River Mill obtained property insurance coverage for the Property from Harleysville-Atlantic Insurance Company ("Harleysville"). It is also undisputed that under the Harleysville policy, the policy limits for coverage on the River Mill event center were raised from $1 million to $2.75 million, but the new policy did not cover all of the buildings that had been covered under the Policy issued by Hanover. Colony was not listed as a loss payee on the new policy issued by Harleysville. According to Hanover, this omission was due to a mistake made by JSL. Def.'s SMF Ex. 6, Yarbrough Dep. 83:10-23, ECF No. 24-21.

In April 2008, River Mill sought to refinance its loan from Colony to pay interest only for six months. Colony approved the interest-only payment request on May 1, 2008. Colony and River Mill closed the refinanced, interest-only loan on May 14, 2008. The refinance documents included an "Agreement to Provide Insurance" for the Property. That document, which was executed on May 14, 2008, lists the Hanover Policy as the insurance policy covering the Property and states that the Policy's effective dates are "05-10-2007 To 05-10-2008." Def.'s SMF Ex. 2, Roberts Dep. Ex. 3, Agreement to Provide Insurance, ECF No. 24-11 at 3.

On October 30, 2008, the Property sustained damages as a result of a fire. Harleysville paid River Mill $2,303,800.12

under its policy for damages caused by the fire.  Def.'s SMF Ex. 15, Proof of Loss Policy Release & Subrogation Agreement, ECF No. 24-33 at 3.  It is undisputed that the event center was fully repaired to Colony's satisfaction.  On August 19, 2010, Colony filed a claim under the Hanover Policy for the damages in the amount of $4,736,448.  In its demand letter, Colony asserted that the Policy was still in effect in October 2008.  Pl.'s SMF Ex. J, Letter from P. Daughtery to Hanover, Aug. 19, 2010, ECF No. 10-8. Hanover contends that the Policy was no longer in effect at the time of the fire and has not paid Colony's claim.

DISCUSSION

I.   **Breach of Contract – Failure to Pay Claim**

The first issue the Court must address is whether there is a genuine fact dispute that Hanover breached its contract with Colony by failing to pay Colony's claim.  For this claim to be viable, the Policy must have been in effect as to Colony on October 30, 2008.  Colony contends that it had a contract with Hanover separate from the contract Hanover had with River Mill because Colony was listed as the loss payee on the Policy. Colony argues that although Hanover attempted to cancel the coverage as of September 1, 2007, the coverage remained in effect as to Colony because Hanover never provided Colony with notice of the cancellation as required by the Policy and by statute.  Thus, due to the alleged ineffective cancellation,

Colony contends that the Policy remained in effect until the original policy period expiration date, which was May 10, 2008. This argument, however, does not support an extension of the Policy through the date of the fire loss, which was October 30, 2008. To capture the fire loss within the policy period, Colony argues that after the Policy was automatically extended to the end of the original policy period due to the ineffective cancellation, Hanover then had an obligation to notify it that the Policy was not being renewed. Because of Hanover's failure to notify Colony of *nonrenewal* in May 2008, Colony maintains that the Policy remained in force as to Colony for another year after that original end of the policy period, which would include the date of the fire loss.

In response, Hanover contends that even if the Court accepts Colony's argument that the Policy was in effect until May 10, 2008 due to an ineffective *cancellation* of the Policy, the law does not support Colony's argument that the Policy automatically *renewed* for another year after that. Hanover maintains that the only consequence of its failure to notify Colony of the nonrenewal of the Policy was an extension of coverage for a maximum of thirty days after the Policy would have expired had coverage continued to the end of the original policy period.

The Court finds that Georgia law makes a distinction between the *cancellation* and the *nonrenewal* of an existing insurance policy.   Georgia law also treats commercial policies differently than automobile and residential policies.   The "cancellation" of an insurance policy by an insurance company "shall be accomplished as prescribed in" O.C.G.A. § 33-24-44 except as otherwise provided.[1]   O.C.G.A. § 33-24-44(a).   Under O.C.G.A. § 33-24-44(b), the insurer must provide written notice of a "cancellation" to the insured and "any lienholder." O.C.G.A. § 33-24-44 does not explain the consequences of failure to provide proper notice of cancellation.   In certain contexts, failure to provide notice of cancellation "results in noncancellation of the policy." *Bank of Toccoa v. Cotton States Mut. Ins. Co.*, 211 Ga. App. 389, 391, 439 S.E.2d 60, 62 (1993) (construing notice requirement of O.C.G.A. § 33-24-44(b) and O.C.G.A. § 33-24-45(d) when bank sought to recover for the loss of a car that was collateral for a loan); *accord* O.C.G.A. § 33-24-45(d) (stating that, for automobile insurance policies, "[n]o

---

[1] An automobile or residential real property insurance policy must be canceled in accordance with O.C.G.A. § 33-24-44; failure to cancel such a policy in accordance with O.C.G.A. § 33-24-44 renders the attempted cancellation ineffective.   O.C.G.A. §§ 33-24-45(d); 33-24-46(c).   For other types of insurance, notice must comply with O.C.G.A. § 33-24-44 if the cancellation is "for failure of the named insured to discharge when due any obligations in connection with the payment of premiums" or "for any reason" if the policy "has been in effect for less than 60 days." O.C.G.A. § 33-24-47(a).   Cancellations that do not fall under O.C.G.A. § 33-24-47(a) are governed by O.C.G.A. § 33-24-47(b) and (c).

notice of cancellation of a policy to which this Code section applies shall be effective unless mailed or delivered as prescribed in Code Section 33-24-44"); *see also* O.C.G.A. § 33-24-46(c)(1) (providing that, for residential real property insurance policies, cancellation is not effective unless it is mailed or delivered in accordance with O.C.G.A. § 33-24-44). For purposes of summary judgment, Hanover assumes that the Policy was in effect as to Colony until May 10, 2008, and the Court finds no reason to challenge that assumption. The question presented is whether the Policy was in effect after that and, if so, for how long.

Colony argues that because the Policy required Hanover to provide Colony with notice of nonrenewal and because Hanover did not provide the required notice, the Policy automatically renewed for another policy period—one year. In support of this argument, Colony relies in part on a number of cases that address the effect of an insurance company's failure to establish effective cancellation of an insurance policy.[2] The

---

[2] *See Reynolds v. Infinity Gen. Ins. Co.*, 287 Ga. 86, 91, 694 S.E.2d 337, 340 (2010) (stating in dicta that automobile insurance policy remains in effect until statutory cancellation notice requirements of O.C.G.A. §§ 33-24-44 and 33-24-45 are met); *Cresent Hills Apartments v. Admiral Ins. Co.*, 277 Ga. 396, 399, 589 S.E.2d 96, 99 (2003) (finding, in case where O.C.G.A. § 33-24-44 applied to cancellation of commercial real estate insurance policy, that insurance company had not established effective cancellation of the policy because it could not prove that the notice was mailed within the time required by O.C.G.A. § 33-24-44); *Nationwide Mut. Fire Ins. Co. v. Bridges*, 140 Ga. App. 242, 242, 230 S.E.2d 491, 492 (1976) (finding no cancellation

Court does not find the cancellation cases analogous to the situation presented here—an alleged failure to notify a lienholder of nonrenewal. *See Banks v. Aetna Cas. & Sur. Co.*, 189 Ga. App. 758, 758, 377 S.E.2d 685, 686 (1989) (cancellation and nonrenewal are not synonymous).

Colony has not cited a case or statute that is directly on point regarding an insurance company's duty to send a notice of nonrenewal of a commercial real property insurance policy to a lienholder. One of the cases relied upon by Colony is *Cresent Hills*, where the Georgia Supreme Court answered a certified question from the Eleventh Circuit Court of Appeals regarding whether an insurance company had complied with the notice requirements of O.C.G.A. § 33-24-44(b) with regard to its cancellation of a commercial real property insurance policy. *Cresent Hills*, 277 Ga. at 398, 589 S.E.2d at 98. The Georgia Supreme Court found that the insurance company had not established effective cancellation of the policy because it could not prove that the notice was mailed within the time required by O.C.G.A. § 33-24-44. *Id.* at 398-99; 589 S.E.2d at 98-99. Neither *Crescent Hills* nor O.C.G.A. § 33-24-44 addresses

of fire insurance policy where insurance company did not make "any effort" to comply with predecessor to O.C.G.A. § 33-24-44 by sending notice of cancellation to the insured); *Employers' Fire Ins. Co. v. Pa. Millers Mut. Ins. Co.*, 116 Ga. App. 433, 438, 157 S.E.2d 807, 811 (1967) (finding that residential real estate insurance policy remained in effect as to mortgagee because insurance company did not give notice of cancellation to mortgagee as required under predecessor to O.C.G.A. §§ 33-24-44 and 33-24-46).

*nonrenewal* of insurance policies, however; and therefore, *Cresent Hills* does not apply to this nonrenewal case.[3]

Colony also relies upon *Bank of Toccoa v. Cotton States Mutual Insurance Co.*, 211 Ga. App. 389, 439 S.E.2d 60 (1993). In *Bank of Toccoa*, the bank sought to recover for the loss of a car it insured. The insurance company argued that the bank could not recover because the insurance company had canceled the policy. The Georgia Court of Appeals found that the cancellation was not effective because the insurer did not comply with policy or statutory requirements regarding notice of cancellation. *Id.* at 390-91, 439 S.E.2d at 62-63. The court further found that "[b]ecause no notice of nonrenewal was provided under O.C.G.A. § 33-24-45(e)(1), the policy was

---

[3] Colony stresses that the *Cresent Hills* court required that the insurer follow the cancellation notice requirements of O.C.G.A. § 33-24-44(b) even though the insurer decided to cancel the policy because of the building's condition five months after the policy was issued. *Cresent Hills*, 277 Ga. at 397, 589 S.E.2d at 97. Colony also notes that under the present version of O.C.G.A. § 33-24-47, cancellation for failure to pay premiums and cancellation for any reason when the policy has been in effect for less than 60 days is governed by O.C.G.A. § 33-24-44, while other terminations—including cancellations and nonrenewals—are governed by O.C.G.A. § 33-24-47(b). Therefore, Colony appears to suggest that *Cresent Hills* stands for the proposition that O.C.G.A. § 33-24-44 applies to all cancellations, even those that appear from the language of O.C.G.A. § 33-24-47 to be covered by that statute. The precise holding of *Cresent Hills* is that the insurer's method of mailing its notice did not comply with O.C.G.A. § 33-24-44. *Cresent Hills*, 277 Ga. at 399, 589 S.E.2d at 99. The *Cresent Hills* court did not explain why it applied O.C.G.A. § 33-24-44 rather than O.C.G.A. § 33-24-47(b). Even if the court's holding had addressed this issue, *Cresent Hills* and O.C.G.A. § 33-24-44 address the notice required for a cancellation of an insurance policy, not the notice required for a nonrenewal.

extended under its terms for an additional six months[.]" *Id.* at 392, 439 S.E.2d at 64.

In reaching its holding in *Bank of Toccoa*, the Georgia Court of Appeals specifically relied on O.C.G.A. § 33-24-45(e)(1), which applies *only* to automobile and motorcycle insurance policies. O.C.G.A. § 33-24-45(a).[4] O.C.G.A. § 33-24-45(e)(1) provides that "[n]o insurer shall refuse to renew a policy to which this Code section applies unless a written notice of nonrenewal is mailed or delivered in person to the named insured." O.C.G.A. § 33-24-45(e)(1). Under the statute, notice of nonrenewal must be mailed to the insured and "the lienholder." O.C.G.A. § 33-24-45(e)(1). The court in *Bank of Toccoa* found that the effect of a failure to provide written notice of nonrenewal to the lienholder as required by O.C.G.A. § 33-24-45(e)(1) was that the policy automatically renewed for another term. *Bank of Toccoa*, 211 Ga. App. at 392, 439 S.E.2d at 64.

Colony appears to acknowledge that no Georgia statute required Hanover to send notice of nonrenewal to Colony; Colony contends that the source of the duty was contractual. Colony argues that the "only difference between this case and *Bank of Toccoa* is the *source* of the duty to provide notice of non-

---

[4] O.C.G.A. § 33-24-46 has a nonrenewal notice provision that is nearly identical to the provision in O.C.G.A. § 33-24-45. O.C.G.A. § 33-24-46 applies only to residential real property insurance policies. O.C.G.A. § 33-24-46(a).

renewal" and that *Bank of Toccoa* provides "definitive guidance regarding continuation of coverage when *some source* imposes a duty upon an insurer to provide notice of non-renewal and the insurer fails to comply with its obligation." Pl.'s Reply in Supp. of Pl.'s Mot. for Partial Summ. J. 10, ECF No. 26. The Court disagrees. *Bank of Toccoa* stands for the proposition that when a statute requires that notice of nonrenewal be provided and further provides that an insurer shall not refuse to renew a policy without first providing the statutory notice, then the legal consequence of failing to give the required notice is that the policy is automatically renewed.

Colony points to no statute applicable to commercial policies that provides that the failure to notify a lienholder of nonrenewal prevents an insurer from failing to renew the policy. The Georgia statute that was crucial to the holding in *Bank of Toccoa* does not apply in the commercial real property insurance context. That statute states that an insurer cannot refuse to renew an insurance policy unless it provides notice to the insured by delivering notice to the insured and any lienholder. O.C.G.A. § 33-24-45(e)(1); *accord* O.C.G.A. § 33-24-46(d) (similar provision in residential real property insurance context). It logically follows that, under O.C.G.A. § 33-24-45, if an insurer does not provide proper notice of nonrenewal, then the refusal to renew is invalid. The Georgia legislature did

not, however, fashion a similar rule for other types of insurance policies, such as commercial real property insurance policies.

O.C.G.A. § 33-24-47 applies to the present case, which involves a nonrenewal that is not covered by O.C.G.A. § 33-24-45 (automobile and motorcycle insurance) or O.C.G.A. § 33-24-46 (residential real property insurance). Unlike O.C.G.A. § 33-24-45 and O.C.G.A. § 33-24-46, O.C.G.A. § 33-24-47 does not state that an insurance company shall not refuse to renew an insurance policy unless it provides prior notice of the nonrenewal. Rather, O.C.G.A. § 33-24-47 states that an insurance company shall send notice of nonrenewal to the insured and that if it does not do so, the insured can purchase additional coverage for thirty days beyond the policy's termination date. O.C.G.A. § 33-24-47(b)-(c). Unlike O.C.G.A. § 33-24-45 and O.C.G.A. § 33-24-46, which require notice of nonrenewal to the insured *and* any lienholder, O.C.G.A. § 33-24-47 only requires notice to the insured.

Based on the foregoing, it is clear that there is no statutory support for Colony's argument that Hanover's failure to provide proper notice of nonrenewal results in automatic renewal of the insurance policy. Moreover, the Policy in question does not provide that Hanover must renew the Policy if it does not give notice of the nonrenewal to Colony. Therefore,

the Court cannot conclude that the Policy was automatically renewed for another year when Hanover failed to send notice or that the Policy was still in effect at the time of the loss.

Colony contends that a different result is counseled by *Waco Fire & Casualty Insurance Company v. Jones*, 180 Ga. App. 26, 348 S.E.2d 547 (1986) (superseded by statute as stated in *S. Gen. Ins. Co. v. Tippins Bank & Trust Co.*, 213 Ga. App. 176, 178 444 S.E.2d 331, 333 (1994)). In *Waco Fire*, the insurer provided a one-year policy of insurance on retail grocery store. The policy was set to expire on March 1, 1983. Though the insurance company offered the insured a renewal, the insured never responded, and the insurer never notified the mortgagee of the impending expiration date. Georgia's former code provided that no policy of insurance "in which the interests of any lienholders named in the policy are protected by a loss payable clause may be canceled or nonrenewed by an insurer so as to destroy the protection afforded by the policy for the interests possessed by the lienholders unless notice of the cancellation or nonrenewal or a copy thereof is sent to the lienholders in the manner provided for in Code Sections 33-24-44 and 33-24-45." O.C.G.A. § 33-24-47 (1983). The Georgia Court of Appeals in *Waco Fire* concluded that the legislature intended to place the burden on the insurer to notify a "loss payee who never had any

inkling or notice that the mortgaged property was not covered by insurance." *Waco Fire*, 180 Ga. App. at 27, 347 S.E.2d at 548.

The rationale of *Waco Fire,* however, does not apply to extend coverage past the expiration date in this case for the simple reason that the statute construed in *Waco Fire* was subsequently amended by the legislature and the present statute applicable to this case is substantively different than the statute in *Waco Fire*. *Waco Fire*'s holding depended on the fact that the statute in effect at the time provided that no policy of insurance "'in which the interests of any lienholders named in the policy are protected by a loss payable clause may be canceled or nonrenewed by an insurer so as to destroy the protection afforded by the policy for the interests possessed by the lienholders unless notice of the cancellation or nonrenewal or a copy thereof is sent to the lienholders in the manner provided for in Code Sections 33-24-44 and 33-24-45.'" *Waco Fire*, 180 Ga. App. at 26, 347 S.E.2d at 547 (quoting O.C.G.A. § 33-24-47 (1983)).

Georgia's legislature rewrote the statutes at issue in *Waco Fire*, striking O.C.G.A. § 33-24-47 in its entirety and rewriting O.C.G.A. § 33-24-46 to "limit[] the notice requirement to those situations in which the insurer 'refused to renew' a covered policy" and not provide for situations where there was a failure to renew caused by the insured's failure to pay premiums. *S.*

17

*Gen. Ins. Co. v. Tippins Bank & Trust Co.*, 213 Ga. App. 176, 178 444 S.E.2d 331, 333 (1994). Unlike the version of O.C.G.A. § 33-24-47 described in *Waco Fire*, the current statutes provide: (1) an insurer may not refuse to renew a residential real property insurance policy unless notice is provided to the insured and the lienholder, O.C.G.A. § 33-24-46(d); and (2) for policies governed by the current version of O.C.G.A. § 33-24-47, a notice of nonrenewal shall be sent to the insured, and the consequence of failure to provide notice is an opportunity for the insured to purchase additional coverage, O.C.G.A. § 33-24-47(b)-(c). For all of these reasons, *Waco Fire* does not apply to extend coverage past the expiration date in this case.

For the reasons set forth above, the Court rejects Colony's argument that the Policy automatically renewed for another year when Hanover failed to send Colony notice of nonrenewal. Hanover is therefore entitled to summary judgment on Colony's breach of contract claim for failure to pay Colony's claim.

## II.  Breach of Contract – Failure to Notify Colony of Nonrenewal

Colony contends that even if the Policy did not automatically renew, Colony is entitled to damages flowing from Hanover's breach of its duty to notify Colony of the nonrenewal. As discussed above, the Policy required Hanover to send notice to Colony if it decided to cancel or nonrenew the Policy. Def.'s SMF Ex. 1, Schoen Dep. Ex. 1, Policy, Georgia

Cancellation and Nonrenewal Endorsement at 2, ECF No. 24-4 at 4. For purposes of the present summary judgment motion, Hanover admits that it did not provide any notice of nonrenewal to Colony.  Hanover argues, however, that O.C.G.A. § 33-24-47(c) provides the remedy for the breach of contract; that remedy is that Colony could purchase additional coverage for thirty days beyond the Policy's termination date, so Colony cannot recover damages due to a loss that occurred more than thirty days beyond the Policy's termination date.  The Court disagrees.

While O.C.G.A. § 33-24-47(c) provides the minimum notice requirements for an insurance policy like the one at issue in this case, an insurance company may certainly contract for stricter notice requirements.  *E.g., Powell v. Lititz Mut. Ins. Co.*, 419 F.2d 62, 65-66 (5th Cir. 1969).[5]  If the Policy here had contained the text of O.C.G.A. § 33-24-47(c), then Colony would have been on notice that the remedy for Hanover's failure to provide a notice of nonrenewal was to permit Colony to purchase additional coverage for thirty days beyond the Policy's termination date.  In other words, Colony would be on notice that it needed to monitor the Policy's expiration date.  *See, e.g., Tippins Bank & Trust Co.*, 213 Ga. App. At 177, 444 S.E.2d at 332 (1994) (finding that O.C.G.A. § 33-24-46 requires insurer

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to send notice of nonrenewal only if nonrenewal is due to insurer's unwillingness or refusal to renew, so it is incumbent on the insured and lienholder to monitor the policy's expiration date).

Here, however, the Policy stated that notice of nonrenewal would be provided to the lienholder, and the Policy did not say what happened as a consequence of Hanover's failure to notify the lienholder.  Accordingly, based on the Policy, Colony could expect to receive a notice of nonrenewal and was not put on notice that it would need to monitor the Policy's expiration date.  Therefore, the Court rejects Hanover's argument that Colony cannot, as a matter of law, recover damages due to a loss that occurred more than thirty days beyond the Policy's termination date.

The remaining question is whether there is a genuine fact dispute as to whether damages reasonably flowed from Hanover's breach of the contract.  The Court finds that there is.  A reasonable factfinder could conclude based on the present record that Hanover's failure to send the nonrenewal notice prevented Colony from knowing that the Policy had not been renewed and that it was not listed as the loss payee on any insurance policy covering the Property; under such circumstances, Colony would be able to recover damages based on the loss.  On the other hand, a reasonable factfinder could conclude based on the present record

that Colony knew because of the refinance documents, well before the loss, that it was not covered under the Policy, yet failed to replace the coverage; under such circumstances, the damages would not be caused by Hanover's breach of its duty to notify of the nonrenewal but by Colony's own actions.  A jury must resolve these questions.  Accordingly, neither party is entitled to summary judgment on Colony's claim that Hanover breached the contract by failing to notify Colony of the nonrenewal.

### III. Bad Faith Claim

Under Georgia law, an insurer is liable for a bad faith penalty and reasonable attorney's fees "[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith.'"  O.C.G.A. § 33-4-6(a). Colony contends that Hanover acted in bad faith as a matter of law when Hanover denied its claim under the Policy.  Colony further argues that even if Hanover did not breach its duty to pay Colony's claim, Hanover is liable under the bad faith statute for breaching its duty to notify Colony of the nonrenewal.

To prevail on a claim under O.C.G.A. § 33-4-6(a), the insured must prove "(1) that the loss is covered by the policy; (2) that after the insured demanded payment, the insurer refused

to pay the covered loss for more than 60 days prior to suit being filed; and (3) that the insurer acted in bad faith in refusing to pay." *Balboa Life & Cas., LLC v. Home Builders Fin., Inc.*, 304 Ga. App. 478, 482, 697 S.E.2d 240, 244 (2010). "Bad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment." *Atl. Title Ins. Co. v. Aegis Funding Corp.*, 287 Ga. App. 392, 392, 651 S.E.2d 507, 508 (2007) (internal quotation marks omitted). "Good faith is determined by the reasonableness of nonpayment of a claim." *Id.* "Because the damages are in the nature of a penalty, the statute is strictly construed and the right to such recovery must be clearly shown." *Id.* "Although the question of good or bad faith is ordinarily for the jury, the insurer is entitled to judgment as a matter of law if it has reasonable grounds to contest the claim or the question of liability is close." *Id.*

In this case, the Court finds that Hanover had reasonable grounds to contest the claim and that no reasonable factfinder could conclude otherwise. Therefore, Hanover is entitled to summary judgment on Colony's bad faith claim. As discussed above, Colony asserted its claim against Hanover under the theory that Hanover's failure to notify Colony of the nonrenewal automatically renewed the Policy for another term. Pl.'s SMF

Ex. J, Letter from P. Daughtery to Hanover, Aug. 19, 2010, ECF
No. 10-8.  The Court has rejected Colony's primary argument and
found as a matter of law that the failure to provide notice of
the nonrenewal did not automatically extend the term of the
Policy.   Hanover took this same position in denying Colony's
claim and certainly was reasonable in doing so.   Therefore,
Colony cannot base its bad faith claim on Hanover's failure to
pay the claim when the theory on which Colony asserted its claim
has been directly rejected by the Court as a matter of law.
Moreover, even if the Court is ultimately wrong in its legal
conclusion, one cannot say that the law was so clear in favor of
coverage that the refusal to pay was in bad faith.

The Court also rejects any argument by Colony that its
breach of contract claim based on Hanover's failure to notify it
of the nonrenewal gives rise to a bad faith claim.  Although the
distinction may appear subtle, the Court finds that a
significant difference exists between a claim for breach of a
provision in an insurance contract and a claim for failure to
pay under the terms of an insurance contract.  Here, the Court
has found for purposes of summary judgment that Hanover
contractually committed to provide notice to Colony if it did
not renew the insurance contract and that by failing to give
that notice, Hanover breached that contractual commitment.  This
breach provides Colony with a breach of contract claim that

arises from a provision in the Policy that is independent of and unrelated to whether coverage exists under the Policy. This type of claim is distinctly different from a claim that coverage exists under the Policy, which is the type of claim that supports a bad faith refusal to pay claim. The Court finds the duty to defend cases cited by Colony to be inapposite because in those cases the breach of the duty to defend depended on a finding that coverage arguably existed under the policy. At a minimum, the two were inextricably intertwined. Here, the Court finds that the breach of contract claim for failure to notify of nonrenewal is distinctly separate from the coverage question. Therefore, the Court finds the bad faith failure to pay statute does not apply to Colony's breach of contract claim. Based on the foregoing, Hanover is entitled to summary judgment on Colony's bad faith claim.

                                  CONCLUSION

     The Court grants in part and denies in part Hanover's summary judgment motion (ECF No. 22) and denies Colony's summary judgment motion (ECF No. 9). The Court concludes that a genuine fact dispute exists on Colony's breach of contract claim based on Hanover's failure to notify Colony that it had not renewed the policy at issue. Accordingly, the parties are not entitled to summary judgment on that claim. To the extent that Colony claims that Hanover breached the contract by failing to pay the

claim when Colony made the demand, the Court finds that such a claim fails.  The Court also finds that Hanover is entitled to judgment as a matter of law on Colony's bad faith claim, so Hanover's motion for summary judgment as to the bad faith claim is granted.

IT IS SO ORDERED, this 9th day of November, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE